# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

-----------------------------------------------------------X
                                     :

JENNIE NICASSIO,                    :

                 :

          Plaintiff,         :

                 :

       -against-        :

                 :   Case No. 2:17-cv-00805-NBF

VIACOM INTERNATIONAL, INC., and  :

PENGUIN RANDOM HOUSE LLC,  :

                 :

        Defendants.     :

                 :

                 :

-----------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

LOEB & LOEB LLP
Jonathan Zavin
Wook Hwang
Sara A. Slavin
345 Park Avenue
New York, New York 10154
(212) 407-4000

BLANK ROME, LLP
Jayme L. Butcher (PA 87568)
501 Grant Street, Suite 850
Pittsburgh, Pennsylvania 15219
(412) 932-2800

*Attorneys for Defendants*
*Viacom International Inc. and*
*Penguin Random House LLC*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................................ ii

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS .......................................................................................................... 3

    I.      PLAINTIFF'S *ROCKY* BOOK .............................................................................. 3

    II.     DEFENDANTS' *ALBERT* BOOK AND FILM ..................................................... 4

ARGUMENT ................................................................................................................................ 6

    I.      PLAINTIFF'S COPYRIGHT INFRINGEMENT CLAIMS
          (COUNTS I AND II) FAIL BECAUSE THE PARTIES' WORKS
          ARE NOT SUBSTANTIALLY SIMILAR ............................................................. 6

          A.     The "Substantial Similarity" Test .................................................................. 6

          B.     There Is No Substantial Similarity Between *Albert* And the
                 Protected Elements of *Rocky* ....................................................................... 8

                1.     Plaintiff Does Not Own the Basic Concept of a Little
                        Christmas Tree Wanting to Be Displayed in a Big
                        City .................................................................................................. 8

                2.     *Albert* and *Rocky* Are Entirely Dissimilar in Their
                        Protectable Expression .................................................................... 11

    II.     PLAINTIFF'S CLAIM FOR FEDERAL AND COMMON LAW
          UNFAIR COMPETITION (COUNT III) FAILS TO STATE A
          CLAIM ................................................................................................................. 16

    III.    PLAINTIFF'S CLAIMS FOR TORTIOUS INTERFERENCE
          AND TORTIOUS DESTRUCTION (COUNTS IV AND V) FAIL
          TO STATE A CLAIM .......................................................................................... 18

CONCLUSION ............................................................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Movie Classics Co. v. Turner Entm't Co.*,
    922 F. Supp. 926 (S.D.N.Y. 1996) ................................................................ 17-18

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ......................................................................................... 19

*Bioquell, Inc. v. Feinstein*,
    2010 U.S. Dist. LEXIS 124077 (E.D. Pa. Nov. 23, 2010) ............................... 20

*In re Burlington Coat Factory Sec. Litig.*,
    114 F.3d 1410 (3d Cir. 1997) ............................................................................. 3

*Cavalier v. Random House, Inc.*,
    297 F.3d 815 (9th Cir. 2002) ............................................................ 9-10, 12, 14

*Coston v. Prod. Movers*,
    1990 U.S. Dist. LEXIS 5203 (E.D. Pa. May 1, 1990) ..................................... 15

*Culinary Serv. of Del. Valley, Inc. v. Borough of Yardley*,
    385 F. App'x 135 (3d Cir. 2010) ...................................................................... 20

*Daley v. Granada US Prods.*,
    2003 U.S. Dist. LEXIS 3133 (E.D. Pa. Jan. 29, 2003) ............................ 7, 10, 11

*Dam Things from Den. v. Russ Berrie & Co.*,
    290 F.3d 548 (3d Cir. 2002) ........................................................................... 6-7

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
    539 U.S. 23 (2003) ............................................................................... 2, 16, 17

*Davis v. Blige*,
    505 F.3d 90 (2d Cir. 2007) .............................................................................. 19

*Dean v. Cameron*,
    53 F. Supp. 3d 641, 648-49 (S.D.N.Y. 2014) ................................................... 9

*DiTocco v. Riordan*,
    815 F. Supp. 2d 655 (S.D.N.Y. 2011), *aff'd.*, 496 F. App'x 126 (2d Cir. 2012) .............. 10, 12

*Feist Publ'ns v. Rural Tel. Serv. Co.*,
    499 U.S. 340 (1991) ......................................................................................... 6

*Fioranelli v. CBS Broad. Inc.*,
    232 F. Supp. 3d 531, 540-41 (S.D.N.Y. 2017) ............................................................... 16-17

*Gaiman v. McFarlane*,
    360 F.3d 644 (7th Cir. 2004) ....................................................................................13

*Gary Friedrich Enters., LLC v. Marvel Enters.*,
    713 F. Supp. 2d 215 (S.D.N.Y. 2009)........................................................................18, 19

*Hayuk v. Starbucks Corp.*,
    157 F. Supp. 3d 285, 292 (S.D.N.Y. 2016)..................................................................11

*Hogan v. DC Comics*,
    48 F. Supp. 2d 298 (S.D.N.Y. 1999)........................................................................13

*Jackson v. Booker*,
    465 F. App'x 163 (3d Cir. 2012) ............................................................................6, 15

*Kay Berry, Inc. v. Taylor Gifts, Inc.*,
    421 F.3d 199 (3d Cir. 2005).....................................................................................6, 7

*Kitchen & Bath Concepts of Pittsburgh, LLC v. Eddy Homes*,
    2016 U.S. Dist. LEXIS 177016 (W.D. Pa. Dec. 22, 2016)....................................18

*Kregos v. Associated Press*,
    3 F.3d 656 (2d Cir. 1993).........................................................................................17

*Maule v. Phila. Media Holdings, LLC*,
    710 F. Supp. 2d 511 (E.D. Pa. 2008) ....................................................................16, 17

*McCormick v. Ferguson*,
    1995 U.S. Dist. LEXIS 14506 (E.D. Pa. Sept. 28, 1995) ...............................12, 13

*Narrative Ark Entm't LLC v. Archie Comic Publ'ns, Inc.*,
    2017 U.S. Dist. LEXIS 143480 (S.D.N.Y. Sept. 5, 2017) ....................................17

*Nichols v. Universal Pictures Corp.*,
    45 F.2d 119 (2d Cir. 1930)....................................................................................10, 15

*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*,
    998 F.2d 1192 (3d Cir. 1993) ...................................................................................3

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*,
    602 F.3d 57 (2d Cir. 2010).......................................................................................8

*Stadt v. Fox News Network LLC*,
    719 F. Supp. 2d 312 (S.D.N.Y. 2010)......................................................................17

*Tanikumi v. Walt Disney Co.*,
  616 F. App'x 518 (3rd Cir. 2015) ................................................................... *passim*

*Tanksley v. Daniels*,
  2017 U.S. Dist. LEXIS 64651 (E.D. Pa. Apr. 28, 2017) ....................................8, 10

*Tegg Corp. v. Beckstrom Elec. Co.*,
  650 F. Supp. 2d 413 (W.D. Pa. 2008) ...........................................................18, 19

*Walker v. Time Life Films, Inc.*,
  784 F.2d 44 (2d Cir. 1986) .................................................................................14

*Whelan Assocs. v. Jaslow Dental Lab., Inc.*,
  797 F.2d 1222 (3rd Cir. 1986) .............................................................................7

*Williams v. Crichton*,
  84 F.3d 581 (2d Cir. 1996) ....................................................................... *passim*

*Winstead v. Jackson*,
  509 F. App'x 139 (3d Cir. 2013) ............................................................... *passim*

## Statutes and Rules

Copyright Act, 17 U.S.C. §§ 101 *et seq.* ............................................... *passim*

Lanham Act, 15 U.S.C. §§ 1051 *et seq.* ................................................ *passim*

Fed. R. Civ. P. 12(b)(6) ...............................................................................1, 7, 9

Defendants Viacom International Inc. and Penguin Random House LLC (collectively, "Defendants") respectfully submit this memorandum of law in support of their motion, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss Plaintiff Jennie Nicassio's Complaint ("Cmplt.") for failure to state a claim upon which relief may be granted.

## PRELIMINARY STATEMENT

This action is based entirely on the frivolous premise that Plaintiff owns the sole and exclusive right to publish stories about little Christmas trees that dream of being displayed in a big city. Plaintiff is the author of the self-published book *Rocky: The Rockefeller Christmas Tree* ("*Rocky*"), a rudimentary children's tale totaling a few dozen sentences about a little forest spruce who hopes to be selected as the Rockefeller Christmas tree. Defendants' *Albert* works (a book and animated film) tell a far more elaborate story about a small potted nursery fir who, through a series of adventures, ends up hoisted atop another tree in the fictional "Empire City Square" as the bearer of the Christmas star. A comparison of the parties' works makes unmistakably clear that they are profoundly different, sharing a single conceptual premise that exists only at the broadest level of abstraction: the basic idea of a small anthropomorphized Christmas tree who wants to be displayed in a big city. On the basis of this unprotectable story premise alone, Plaintiff has commenced this lawsuit, asserting two claims of copyright infringement, a claim for "unfair competition" under the Lanham Act and state law, and additional state law claims for "tortious interference with prospective advantage" and "tortious destruction of intellectual property." Each of these claims fails completely.

Plaintiff's copyright claims fail because, as a matter of law, there is no actionable similarity between the protectable elements of the parties' respective works. The case law is overwhelming and uniform that basic story concepts like the one on which this action is based are *not* subject to any copyright monopoly. Other than this unprotectable idea, the plot, sequence

of events, themes, dialogue, characters and settings in the parties' works – all of the elements courts actually consider in the determinative substantial similarity analysis – are entirely *dis*similar, and mandate the dismissal of Plaintiffs' copyright claims.

Plaintiff's other claims fare no better. Plaintiff's claim for "unfair competition" under the Lanham Act is squarely foreclosed by the Supreme Court's decision in *Dastar Corp. v. Twentieth Century Fox Film Corp.* As *Dastar* held, and as its progeny have repeatedly reaffirmed, claims arising from the unauthorized use of copyrightable works are within the exclusive domain of the Copyright Act, and are *not* actionable under the Lanham Act. Plaintiff's state law claims for unfair competition and tortious interference with prospective advantage fail for much the same reason: because they are qualitatively equivalent to, and thus preempted by, the Copyright Act. Plaintiff's tortious interference claim fails for the additional and independent reason that the Complaint fails to include *any* factual allegations that Defendants interfered with any business relationships or that Plaintiff suffered any damages, instead offering only a formulaic recitation of elements that, under the governing pleadings standards, do not state a claim. Finally, Plaintiff's claim for "tortious destruction of intellectual property" (Count V) fails because it is not even a recognized cause of action under Pennsylvania or New York law. To the extent such a cause of action exists, it too would be preempted by the Copyright Act.

No amount of fact-finding, or amendment to Plaintiff's Complaint, can change the content of the subject works, nor alter the conclusion that each of Plaintiff's claims is foreclosed as a matter of law. Accordingly, Plaintiff's Complaint should be dismissed in its entirety, with prejudice.

The facts set forth herein are taken from the allegations and materials referenced and/or "integral to" the Complaint, specifically, the parties' works.[1]  Because it is a comparison of the works themselves that control (*see* Argument, Section I.A *infra*), the descriptions below are provided only for the Court's convenience.

## I.     PLAINTIFF'S *ROCKY* BOOK

*Rocky* is the story of an anthropomorphized Norway Spruce who aspires to become the Rockefeller Center Christmas tree.  The story opens in a forest where the creatures are preparing for winter and for the annual Rockefeller Center Christmas tree contest, where one tree will be chosen for display at Rockefeller Center.  Rocky dreams of winning this contest.  Due to his diminutive size, he is mocked by the forest animals "AJ the squirrel" and "Mrs. Pickles the skunk."  "Bruce Spruce," a larger Norway Spruce, further taunts Rocky and tries to intimidate him into dropping out of the contest.

Rocky is then visited by Mary Louise, a fairy who lives in the forest.  She tells Rocky that he merely has to believe in himself.  Rocky listens to Mary Louise and, through the power of his belief, begins to grow taller and thicker.  Suspecting that Mary Louise has used magic to effect Rocky's physical transformation, Bruce the Spruce and AJ scheme to trap Mary Louise and make her change Rocky back to his smaller size.  Bruce and AJ capture Mary Louise, but

---

[1] Plaintiff's *Rocky* book, Defendants' *Albert* book and a DVD of the *Albert* film are annexed to the accompanying Declaration of Wook Hwang ("Hwang Decl.").  Third Circuit law is settled that a district court may, on a motion to dismiss, consider materials submitted by a defendant that are referenced in and/or integral to the complaint.  *See, e.g., Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (district court may consider an "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document"); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) ("Plaintiffs cannot prevent a court from looking at the texts of the documents on which its claim is based by failing to attach or explicitly cite them.").

she denies using magic on Rocky, explaining that she simply "told Rocky to believe in himself and anything would be possible."

Bruce and AJ free Mary Louise as the contest's judges descend on the forest to pick the winning tree. The judges select Rocky, declaring, "We found the perfect tree!" The book concludes with Rocky on display at Rockefeller Center, where Mary Louise places a Christmas star on top of him and Rocky smiles to show that "[i]t was Rocky's happiest day!"

## II.    DEFENDANTS' *ALBERT*  BOOK AND FILM[2]

*Albert* is a far more elaborate tale. It opens in a plant nursery occupied by a cast of characters that include (among others) Albert himself, a gregarious potted Douglas fir; his friends Maisie, a perky palm tree, and Gene, a stink-breath weed; a Venus flytrap named Jaws; a belching bonsai tree; Earth Mama, the proprietor of the nursery; Donny, her son; and Molly, Earth Mama's small granddaughter who befriends Albert. Albert is full of Christmas spirit, but is discouraged by the delivery of Christmas trees outside that, unlike him, will be taken home by customers and decorated for Christmas. Hearing on television that the search for the Empire City Christmas Tree is taking place in Baker's Hill, Vermont, Albert, Maisie and Gene hitch (unbeknownst to Donny) a ride on Donny's truck, which is headed to Baker's Hill to make a plant delivery.

Along the way to Baker's Hill, Albert, Gene, and Maisie undergo a series of adventures and mishaps. The first stop on their journey is a restaurant called Cactus Pete's, where Albert and his friends meet Cactus Pete, an aggressive bully who hates Christmas, and "his ragtag band of cacti." Albert, Maisie, and Gene brawl with Pete and the other cacti. They escape mostly

---

[2] The book is titled *Albert: The Little Tree with Big Dreams* while the film is simply titled *Albert*. They tell virtually the same story, with only minor variations that are not relevant for a comparison to Plaintiff's work. Unless otherwise noted, the description herein applies to both the book and film.

unharmed, but Donny's truck departs for Baker's Hill and leaves them behind. Maisie soon spots a truck that appears to have "Baker's Hill" painted on its side and hops aboard with Albert and Gene. Unbeknownst to them, Cactus Pete also grabs onto the truck as it departs. The truck deposits all four plants onto a conveyer belt at a paper mill, where trees are mulched. Albert and his friends narrowly avoid this fate and escape to the surrounding forest, where they continue their journey to find Baker's Hill. In the forest, they are chased by hungry, vegetarian bunnies that want to eat them. They evade the bunnies, and finally stumble on Baker's Hill.

There, the man Albert had seen on television approaches Albert and exclaims that they have found their tree. Albert beams, believing it is him. However, the man walks past Albert and announces the actual selected tree, a towering Christmas tree many times Albert's height named Big Betty. As Albert and his friends prepare to go home in defeat, Albert spots Cactus Pete boarding a truck headed to Empire City to ruin Christmas. To prevent Pete from doing so, Albert, Maisie, and Gene hitch a ride to Empire City (in the book, on a news van, and in the film, on a helicopter).

Once in Empire City, Albert confronts Pete. As they scuffle, Pete pricks a crane operator who is in the process of placing a star atop the display tree (Big Betty), which causes the crane operator to inadvertently sever the peak of Big Betty. The crowd is dismayed, but then Albert remembers Molly's encouragement at the beginning of story: "It's okay to be small, as long as it doesn't stop you from doin' big things." Albert is then quickly decorated and hoisted to the top of Big Betty to take the place of the severed peak. Albert proudly perches there as the star is placed atop his head.

As night falls, Maisie and Gene wave goodbye to Albert, who is sad to see them leave. Albert spots Cactus Pete looking forlorn. He realizes that Pete is a Christmas curmudgeon only

because he hates being left out – a feeling with which Albert can empathize. With Maisie's help, Albert swaps places with Cactus Pete atop the Christmas tree. Albert, Maisie and Gene depart for home. The story concludes back at Earth Mama's nursery, where Albert and his plant family celebrate Christmas, and Molly places a star atop Albert.

<u>**ARGUMENT**</u>

I. **PLAINTIFF'S COPYRIGHT INFRINGEMENT CLAIMS (COUNTS I AND II) FAIL BECAUSE THE PARTIES' WORKS ARE NOT SUBSTANTIALLY SIMILAR**

A. <u>The "Substantial Similarity" Test</u>

To establish [copyright] infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). "Not all copying, however, is copyright infringement."[3] *Kay Berry, Inc. v. Taylor Gifts, Inc.*, 421 F.3d 199, 208 (3d Cir. 2005) (citation and quotation marks omitted). Thus, "even if actual copying is proven, the court must decide, by comparing the allegedly infringing work with the original work, whether the copying was unlawful." *Jackson v. Booker*, 465 F. App'x 163, 166-67 (3d Cir. 2012). This inquiry requires "[t]he one claiming infringement [to] demonstrate that the copying was improper or unlawful by showing that the second work bears substantial similarity to protected expression in the earlier work." *Id.* (quoting *Castle Rock Entm't, Inc. v. Carol Publ'g Grp., Inc.*, 150 F.3d 132, 137 (2d Cir. 1998)) (quotation marks omitted). It is only where "there is 'substantial' similarity between the alleged infringing work and <u>protectible</u> elements of the original work" that there can be "actionable copying." *Dam Things from Den. v. Russ Berrie & Co.*, 290 F.3d 548, 562 (3d

_____

[3] For purposes of this motion only, Defendants assume *arguendo* that Plaintiff has adequately alleged that Plaintiff owns a valid copyright to *Rocky* and that Defendants had access to Plaintiff's work prior to their creation of *Albert*.

Cir. 2002) (emphasis added; citation omitted).  The test for determining actionable substantial similarity is "whether a 'lay-observer' would believe that the copying was of protectable aspects of the copyrighted work."  *Winstead v. Jackson*, 509 F. App'x 139, 143-45 (3d Cir. 2013).

Copyright protection does *not* extend to ideas, only to an author's unique expression thereof.  *See, e.g., Kay Berry*, 421 F.3d at 208 ("It is a fundamental premise of copyright law that an author can protect only the expression of an idea, but not the idea itself.").  Similarly, copyright protection does not extend to *scenes a faire*, or "incidents, characters or settings which are as a practical matter indispensable . . . in the treatment of a given topic."  *Whelan Assocs. v. Jaslow Dental Lab., Inc.*, 797 F.2d 1222, 1236 (3rd Cir. 1986); *see also, e.g., Daley v. Granada US Prods.*, 2003 U.S. Dist. LEXIS 3133, at *4 (E.D. Pa. Jan. 29, 2003) (explaining that "all situations and incidents which flow naturally from a basic plot premise, known as *scenes a faire*, are also not entitled to copyright protection").  Thus, "[w]hen determining whether two works are substantially similar, a fact-finder must determine whether the later work is similar because it appropriates the unique expressions of the original author, or merely because it contains elements that would be expected when two works express the same idea or explore the same theme."  *Kay Berry*, 421 F.3d at 208.  In other words, the substantial similarity inquiry requires the Court to distinguish "between the author's expression and the idea or theme that he or she seeks to convey or explore, because the former is protected and the latter is not."  *Tanikumi v. Walt Disney Co.*, 616 F. App'x 518, 519 (3rd Cir. 2015) (citation and quotation marks omitted).

Third Circuit law is settled that, on a Rule 12(b)(6) motion to dismiss, courts should consider the parties' works to undertake the substantial similarity analysis.  *See, e.g., Tanikumi*, 616 F. App'x at 518 ("[B]ecause Tanikumi's books and Disney's motion picture were integral to the complaint and part of the record before the court, the District Court did not err in considering

the works to determine that Tanikumi had failed to state a plausible copyright infringement claim."); *Winstead v. Jackson*, 509 F. App'x 139, 143 (3d Cir. 2013) ("[W]here the works in question have been submitted by the parties …, it is proper for the District Court to consider the similarity between those works in connection with a motion to dismiss."); *Tanksley v. Daniels*, 2017 U.S. Dist. LEXIS 64651, at *10 n.4 (E.D. Pa. Apr. 28, 2017) (same holding). Indeed, "[w]hen a court is called upon to consider whether the works are substantially similar, no discovery or fact-finding is typically necessary, because what is required is only a visual comparison of the works." *Winstead*, 509 F. App'x at 143 (quoting *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010); internal quotation marks omitted).

Accordingly, in the substantial similarity analysis, "the works themselves supersede and control contrary descriptions of them, including any contrary allegations, conclusions or descriptions of the works contained in the pleadings." *Peter F. Gaito*, 602 F.3d at 64.

### B. There Is No Substantial Similarity Between *Albert* And the Protected Elements of *Rocky*

Plaintiff's copyright claims fail completely because there is no actionable substantial similarity between *Albert* and the protectable elements of Plaintiff's *Rocky* book. The shared similarity is limited to a single, basic story concept that copyright law does not protect. And, as even a cursory review of the parties' works shows, *Albert* and *Rocky* are entirely *dis*similar in their protectable expression.

### 1. Plaintiff Does Not Own the Basic Concept of a Little Christmas Tree Wanting to Be Displayed in a Big City

The crux of Plaintiff's claim of similarity is that "[b]oth stories feature a young imperfect Christmas tree that strives to be on display in New York," and "[b]oth Rocky and Albert are put on display in New York and a star is placed on their heads in celebration as a large crowd

watches."[4]  (Cmplt. ¶ 27).  Courts in this Circuit and across federal jurisdictions have *repeatedly* rejected claims based on broad conceptual premises like this one.[5]

In *Tanikumi v. Walt Disney Co.*, for example, the Third Circuit affirmed the Rule 12(b)(6) dismissal of a copyright infringement claim asserted against the Disney animated film *Frozen*, rejecting the plaintiff's contention of substantial similarity based on commonalities like "a mountain setting, an intense sisterly bond, an untrue lover, and a resolution in which the female protagonist comes into her own without the help of a man."  616 F. App'x at 520-21.  As the court explained, "[w]hile there are indeed certain similarities between the works, they concern prototypical settings, plots, and characters too indistinct to merit copyright protection."  In *Cavalier v. Random House, Inc.*, 297 F.3d 815 (9th Cir. 2002), the court held that there was

---

[4]  That "a star is placed on [both Rocky's and Albert's] heads in celebration as a large crowd watches" is a classic *scene a faire* that flows naturally from any story about a Christmas tree on public display, and thus cannot support any claim of substantial similarity.  *See, e.g., Williams v. Crichton*, 84 F.3d 581, 589 (2d Cir. 1996) ("[P]lacing dinosaurs on a prehistoric island far from the mainland amounts to no more than a *scene a faire* in a dinosaur adventure story.").  For the same reason, Plaintiff's assertion that *Albert*'s cover art infringes *Rocky*'s – because both covers depict "an illustrated Christmas tree in a red base dressed with a star, set in a big city environment" (Cmplt. ¶ 27) – would apply to any illustration of a publicly displayed Christmas tree in a big other city, and is thus also a *scenes a faire* flowing from the unprotectable concept underlying the parties' works.  *See, e.g., Dean v. Cameron*, 53 F. Supp. 3d 641, 648-49 (S.D.N.Y. 2014) (granting motion to dismiss copyright claim against film *Avatar* based on infringement of plaintiff's artwork; "Suspending a landmass is a predictable — if not common — way to make a vista more sweeping, breathtaking, and fantastical, and is plainly subject to both the principle that ideas are not protected and the doctrine of *scènes à faire*.").

[5]  Though not necessary to consider for the disposition of this motion, the concept of a little Christmas tree with dreams is of course anything but new to children's literature.  Dozens of children's fictional works have been written about little Christmas trees (*see, e.g.,* https://www.amazon.com/s/ref=nb_sb_noss_2?url=search-alias%3Dstripbooks&field-keywords=little+christmas+tree), including by literary luminaries such as Hans Christian Andersen (*see* https://en.wikipedia.org/wiki/The_Fir-Tree) and E.E. Cummings (*see* https://www.poetryfoundation.org/poems/47304/little-tree), and noted children's author Margaret Wise Brown (https://www.harpercollins.com/9780060281892/the-little-fir-tree).  Similarly, the annual search for the Rockefeller Center Christmas Tree is a well-known fact that Plaintiff also does not own.  (*See, e.g.,* https://en.wikipedia.org/wiki/Rockefeller_Center_Christmas_Tree (describing annual tree selection process); http://nypost.com/2017/10/31/rockefeller-center-has-chosen-this-years-christmas-tree/ (describing selection of 2017 tree)).

no substantial similarity where the parties' respective children's works "share[d] the general premise of a child, invited by a moon-type character, who takes a journey through the night sky and returns safely to bed to fall asleep." *Id.* at 824. The court explained that "basic plot ideas, such as this one, are not protected by copyright law." *Id.* In *Williams*, 84 F.3d 581, the Second Circuit held that the film *Jurassic Park* was not substantially similar to the children's book series *Dinosaur World* where the works "share[d] a setting of a dinosaur zoo or adventure park, with electrified fences, automated tours, dinosaur nurseries, and uniformed workers," and "in both works the characters spend the night in the dinosaur zoo and escape from dangerous dinosaurs by helicopter through the combined wit of the children and adults." *Id.* at 589. Such generic similarities, the court explained, were "classic *scenes a faire* that flow from the uncopyrightable concept of a dinosaur zoo." *Id.*

These are just a few of the multitude of decisions across federal jurisdictions rejecting copyright claims based on shared general plot ideas like the one at the heart of this action, because "[g]eneral plot ideas are *not* protected by copyright law."[6] *Tanksley*, 2017 U.S. Dist.

---

[6] *See, e.g., Winstead v. Jackson*, 509 F. App'x 139, 143-45 (3d Cir. 2013) (no substantial similarity based on shared story concepts of "an angry and wronged protagonist who turns to a life of violence and crime … [and] asking for God's help when his father dies, cutting drugs with mixing agents to maximize profits, and complaining about relatives who are addicts and steal the product"); *Tanksley*, 2017 U.S. Dist. LEXIS 64651, at *45 (no substantial similarity where works shared common story of "an African-American male who has overcome a disadvantaged/criminal past to achieve financial success in the music industry only to be exploited by those closest to him") (citation omitted); *Daley*, 2003 U.S. Dist. LEXIS 3133, at *13 (no substantial similarity where works shared "the idea of a fictional daughter of Robin Hood falling in love while proving herself to her father and to other men"); *Nichols v. Universal Pictures Corp.*, 45 F.2d 119, 121-22 (2d Cir. 1930) (no substantial similarity where both works centered on a "quarrel between a Jewish and an Irish father, the marriage of their children, the birth of grandchildren and a reconciliation") (Hand, J.); *DiTocco v. Riordan*, 815 F. Supp. 2d 655, 668-69 (S.D.N.Y. 2011) (no substantial similarity where works centered on "[y]oung male heroes who must cope with missing parents and display their strength in battles with otherworldly forces," "a sidekick," and love interests who are "blond females who like to watch baseball and tease the protagonist"), *aff'd.*, 496 F. App'x 126 (2d Cir. 2012).

LEXIS 64651, at *28 (emphasis added); *see also, e.g., Daley,* 2003 U.S. Dist. LEXIS 3133, at *4 ("General plot ideas and themes lie in the public domain and are not protected by copyright law."). The conclusion in this action is no different. As in these cases, the generic plot idea of a little Christmas tree with dreams of being on display is *not* protectable, and does nothing to support a claim of copyright infringement.

2. <em>Albert</em> and <em>Rocky</em> Are Entirely Dissimilar in Their Protectable Expression

The complete *dis*similarity in the protectable expression of the parties' respective works mandates dismissal here. *See, e.g., Winstead v. Jackson*, 509 F. App'x at 143-45 (no infringement where "Winstead's book and Jackson's works are different with respect to character, plot, mood, and sequence of events"); *Hayuk v. Starbucks Corp.*, 157 F. Supp. 3d 285, 292 (S.D.N.Y. 2016) ("[C]ourts, in applying the substantial similarity test, have found certain similarities to exist as to portions of an allegedly infringing work, but nonetheless held that substantial similarity did not exist because of overwhelming dissimilarities in the works.").

<u>First</u>, the plotlines and sequence of events are entirely different. The arc of Plaintiff's work is that Rocky, encouraged by a forest fairy, wills himself to grow larger through nothing but the power of belief, and is thus able to beat his competitor "Bruce the Spruce" in a selection process to be the Rockefeller Christmas tree. In Defendants' works, Albert's path shares *no* similarity to Rocky's. He does not grow, and is not selected to be the display tree. Instead, through a series of adventures and sequences completely unlike Rocky's straightforward selection, Albert reaches Empire City Square. Once there, Albert foils Cactus Pete's attempts to ruin Christmas, ultimately, by serving as the star bearer atop the actual display tree when its top has been severed as a result of Cactus Pete's shenanigans. Indeed, *Albert*'s central plot sequences – from the initial scuffle with Cactus Pete, the near mulching at the paper mill, the

encounter with hungry vegetarian bunnies, the chopping of the display tree at the city square, and the ultimate reconciliation with the antagonist Cactus Pete – bear *no* similarity whatsoever, substantial or otherwise, with the storyline in *Rocky*. These differences foreclose any plausible claim of substantial similarity.

<u>Second</u>, the themes are markedly different. The central moral of *Rocky* is, simply, that the power of belief can accomplish the impossible. This theme is manifested by the story's central plot point – Rocky's physical transformation into a larger, fuller tree through his will alone. *Albert*, on the other hand, focuses on the idea of perseverance to achieve one's dreams. As Molly tells Albert, "it's okay to be small, as long as it doesn't stop you from doin' big things." Unlike *Rocky, Albert* also explores the themes of camaraderie among friends and reconciliation with enemies, and the notion that kindness is infectious. The only thematic similarities between the works are the ideas of "dreaming big" and standing up to "bullies" (Cmplt. ¶ 27) – concepts that Plaintiff, of course, does not own. *See, e.g., Cavalier*, 297 F.3d at 828 ("The themes of teaching children to have confidence, to overcome their fears, and to try are . . . too general to be protected."); *see Tanikumi*, 616 Fed. App'x at 521 (theme of female protagonist coming into her own without the help of a man not protectable); *McCormick v. Ferguson*, 1995 U.S. Dist. LEXIS 14506, at *10 (E.D. Pa. Sept. 28, 1995) (no copyright protection for such "basic" themes as "battling some form of adversity" and "the eventual triumph of good over evil"); *see also DiTocco*, 815 F. Supp. 2d at 669 (stock themes such as "the development of an adolescent into a man through a series of tests," "facing down one's enemies," "how mythology affects the real world," bravery and independence not copyrightable).

<u>Third</u>, the characters are also entirely different. *Rocky* has a total of five characters: two spruce trees, two speaking animals and a fairy. *Albert* has *no* fairy, *no* speaking animals, and *no*

spruce trees. Rocky's only friend is the forest fairy, Mary Louise. Albert's friends include the two plants who accompany him on his adventures – Maisie the palm tree and Gene the stink-breath weed – as well as the child Molly and the numerous other plants that live in the nursery run by Molly's grandmother. The antagonists are entirely different as well. *Albert's* antagonist is Cactus Pete, who, underneath his brash exterior, is driven to ruin Christmas by a feeling of loneliness and exclusion. *Rocky*'s antagonist is a spruce tree who has no such nuance, and opposes Rocky simply because they are competitors. In short, the *only* character similarity between the parties' works is that they both have a little Christmas tree as a protagonist, which of course does not establish any actionable similarity. *See, e.g., McCormick*, 1995 U.S. Dist. LEXIS 14506, at *8-9 ("[T]he only discernable resemblance between Plaintiff's protagonist and the protagonist in 'The Lion King' is that they presumably belong to the same species. This is not sufficient to demonstrate substantial similarity and to prove copyright infringement."); *see also* Note 5 *supra*. Indeed, courts have repeatedly rejected claims of character infringement where far greater similarities existed.[7] Plaintiff's claim of similarity because both parties' works include "bullies" (Cmplt. ¶ 27) is, frankly, absurd. *See, e.g., McCormick,* 1995 U.S. Dist. LEXIS 14506, at *9 ("[T]he mere fact that each work presents an adversary in opposition to its protagonist is clearly a basic theme which accompanies the preponderance of fictional works.").

Fourth, the settings in the works do not share any substantial similarity. Rocky lives in the forest. Albert lives in a plant nursery. The entirety of *Rocky* is set in the forest where Rocky

---

[7] *See, e.g., Hogan v. DC Comics*, 48 F. Supp. 2d 298, 311-12 (S.D.N.Y. 1999) (no infringement where two characters had same name and were both half-vampire and half-human, of similar age, and shared other characteristics such as "thin-to-medium builds, pale skin, dark messy hair and a slovenly appearance"); *see generally Gaiman v. McFarlane*, 360 F.3d 644, 660 (7th Cir. 2004) (noting rhetorically that, "[i]f a drunken old bum were a copyrightable character, so would be a drunken suburban housewife, a gesticulating Frenchman, a fire-breathing dragon, a talking cat, a Prussian officer who wears a monocle and clicks his heels [and] a masked magician").

lives, until the end of the story when Rocky goes to Rockefeler Center. *Albert*'s settings follow the Albert's adventures, from his nursery, to Cactus Pete's restaurant, to a paper mill, to Baker's Mill where the tree selection takes place, and finally to the city square where the selected tree is on display. The *only* similarity is the common setting of a city square in New York – hardly one Plaintiff can claim to own. *See, e.g., Walker v. Time Life Films, Inc.*, 784 F.2d 44, 50 (2d Cir. 1986) ("[T]he book and the film share an identical setting, and police officers are central characters in both works. But … the notion of telling a police story that takes place [in the South Bronx and the 41st Precinct] cannot be copyrightable."); *Williams*, 84 F.3d at 589 (no substantial similarity where works "share a setting of a dinosaur zoo or adventure park, with electrified fences, automated tours, dinosaur nurseries, and uniformed workers"); *Tanikumi*, 616 F. App'x at 521 (shared "mountain setting" too indistinct to be protectable); *Cavalier*, 297 F.3d at 824 (shared setting of a night sky "naturally and necessarily flows from the basic plot premise of a child's journey through the night sky; therefore, the night sky setting constitutes scenes-a-faire and cannot support a finding of substantial similarity").

Plaintiff's attempt to manufacture substantial similarity by lifting certain phraseology out of context (Cmplt. ¶¶ 29-31) does nothing to support the copyright claims. Most of the phrases Plaintiff highlights are not even remotely similar. (*See id.* ¶ 30 (comparing "no one loved Christmastime more than the plants" to "[a]ll the animals in the forest loved December")). Indeed, the collection of allegedly similar words and phrases include, in their totality, "dreams," "tree," "city," "loved," "found [the perfect/our] tree!," "most famous Christmas tree in the world." (*Id.* ¶¶ 29-31). These stock words and phrases are not actionable, as a matter of law. *See, e.g., Winstead v. Jackson*, 509 F. App'x 139, 144-45 (3d Cir. 2013) (phrases such as "'Yo, where is my money at,' 'I would never have done no shit like that to you,' 'my father, my

strength was gone,' 'he was everything to me,' and 'I did not know what to do,' … 'putting the work in,' 'get the dope, cut the dope,' 'let's keep it popping,' and 'the strong take from the weak but the smart take from everybody' … are either common in general or common with respect to hip hop culture, and do not enjoy copyright protection"); *Jackson v. Booker*, 465 F. App'x 163, 168 (3d Cir. 2012) (phrase "I know the kid" unprotectable); *Coston v. Prod. Movers*, 1990 U.S. Dist. LEXIS 5203, at *21 (E.D. Pa. May 1, 1990) (phrase "count the days 'til Christmas" unprotectable). As a review of the works themselves makes clear, "[t]he average person reading or listening to these phrases in the context of [the] overall story or song would not regard them as unique and protectable." *Winstead*, 509 F. App'x at 145.

Similarly, Plaintiff's attempt to claim infringement by noting random and meaningless similarities in the works – such as "interactions with people in the forest" (Cmplt. ¶ 27), a "red helicopter" (used in completely different contexts) (*id.* ¶ 36) and a "red base" for the protagonists (in *Albert*, a circular orange pot and, in *Rocky*, a square red platform) (*id.*) – simply underscore Plaintiff's attempt to fabricate infringement out of whole cloth, based on generalized abstractions that, if protectable, would effectively give Plaintiff a monopoly over large swaths of creative expression. That of course is not the law. *See, e.g., Nichols*, 45 F.2d at 121 (in formulating oft-repeated "abstractions test," explaining that "there is a point in this series of abstractions where [elements] are no longer protected, since otherwise the playwright could prevent the use of his 'ideas,' to which, apart from their expression, his property is never extended"). Even if these "similarities" were to otherwise protectable elements (they are not), "random similarities scattered throughout the works … cannot support a finding of substantial similarity because it fails to address the underlying issue: whether a lay observer would consider the works as a whole

substantially similar to one another." *Williams*, 84 F.3d at 590 (citation and quotation marks omitted).

Considering the overwhelming dissimilarity in the parties' works, no reasonable "'lay-observer' would believe that the copying was of protectable aspects of the copyrighted work." *Winstead*, 509 F. App'x at 143-45. In short, Plaintiff's copyright infringement claims fail completely because the parties' works are not substantially similar.

## II.    PLAINTIFF'S CLAIM FOR FEDERAL AND COMMON LAW UNFAIR COMPETITION (COUNT III) FAILS TO STATE A CLAIM

Plaintiff's claim for "unfair competition," brought pursuant to both the Lanham Act and New York common law (Cmplt. ¶ 62), is premised on the formulaic allegation that "Defendants' have used and continue to use their infringing publications in connection with sales, offering for sale or distribution, advertising and promotion of goods that is likely to cause confusion or mistake or to decieve [*sic*] purchasers as to the source of orgin [*sic*] of such goods, and/or as intentionally have acted to deceive, and have deceived consumers in making infringing sales of their *Albert* products." (*Id.* ¶ 60). This claim is meritless.

Plaintiff's federal unfair competition claim under the Lanham Act is barred by the Supreme Court's decision in *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003). In that case, the Supreme Court rejected a Lanham Act claim arising from the distribution of copyrightable content without credit to the author, explaining that the Lanham Act, unlike the Copyright Act, was "*not* designed to protect originality or creativity." *Id.* at 37 (emphasis in original). Thus, the Lanham Act does not afford a cause of action "for, in effect, plagiarism" to an "author of any idea, concept, or communication." *Id.* at 36-37.

Accordingly, "an author may not claim that the producer of the tangible product, by reproducing the author's ideas without proper attribution, has committed an actionable 'false

designation of origin'" under the Lanham Act. *Fioranelli v. CBS Broad. Inc.*, 232 F. Supp. 3d 531, 540-41 (S.D.N.Y. 2017). In *Maule v. Phila. Media Holdings, LLC*, 710 F. Supp. 2d 511 (E.D. Pa. 2008), for example, the court dismissed a Lanham Act claim alleging that the defendant "has violated the Act by copying his photographs and including them in the pig glossy and in the *Daily News* without his permission," explaining that, under *Dastar*, "the protections of the Lanham Act do not reach to the underlying expressions embodied in goods." *Id.* at 518-19; *see also Narrative Ark Entm't LLC v. Archie Comic Publ'ns, Inc.*, 2017 U.S. Dist. LEXIS 143480, at *13 (S.D.N.Y. Sept. 5, 2017) (ruling that "[u]nder Dastar, . . . the law of unfair competition does not allow a claim for false or misleading representations as to the origin of the content of a 'communicative product.'"). Plaintiff's "unfair competition" claim, to the extent it is asserted under the Lanham Act, is therefore barred as a matter of law.

For similar reasons, Plaintiff's state law claim for unfair competition fails because it is preempted by the Copyright Act. Courts addressing unfair competition claims under New York and Pennsylvania law have uniformly held that claims for unfair competition are not qualitatively different from a claim for copyright infringement, and are thus preempted by section 301 of the Copyright Act. *See, e.g., Kregos v. Associated Press*, 3 F.3d 656, 666 (2d Cir. 1993) (claim for unfair competition under New York law based on "the copying of … protected expression" held to be preempted by Copyright Act because it "requires proof of no element that is in excess of those elements necessary to establish a copyright-infringement action."); *Stadt v. Fox News Network LLC*, 719 F. Supp. 2d 312, 322 (S.D.N.Y. 2010) ("[R]everse passing off does not constitute an extra element for preemption purposes because it is essentially a claim for unauthorized use of copyrightable material."); *Am. Movie Classics Co. v. Turner Entm't Co.*, 922 F. Supp. 926, 934 (S.D.N.Y. 1996) ("A claim that a defendant has reproduced the plaintiff's

work and sold it under the defendant's name . . . is preempted by the Copyright Act."); *Kitchen & Bath Concepts of Pittsburgh, LLC v. Eddy Homes*, 2016 U.S. Dist. LEXIS 177016, at *18-19 (W.D. Pa. Dec. 22, 2016) (Fischer, J.) ("Because Plaintiff's claim for unfair competition [under Pennsylvania law] does not require 'an extra element,' it is 'equivalent' to Plaintiff's claim for copyright infringement and is, therefore, preempted by the Copyright Act.") (citations omitted).[8]

### III.  PLAINTIFF'S CLAIMS FOR TORTIOUS INTERFERENCE AND TORTIOUS DESTRUCTION (COUNTS IV AND V) FAIL TO STATE A CLAIM

Plaintiff's claim for "tortious interference with prospective advantage" and "tortious destruction of intellectual property" also fail to state a claim, for multiple independent reasons.

First, as with the claim for common law unfair competition, these claims are also preempted by the Copyright Act, whether New York or Pennsylvania law governs.  Courts have repeatedly held that tortious interference claims are equivalent to claims for copyright infringement.  *See, e.g., Tegg Corp. v. Beckstrom Elec. Co*., 650 F. Supp. 2d 413, 428-29 (W.D. Pa. 2008) (Fischer, J.) (dismissing tortious interference claim governed by Pennsylvania law as preempted by Copyright Act); *Gary Friedrich Enters., LLC v. Marvel Enters*., 713 F. Supp. 2d 215, 228 (S.D.N.Y. 2009) (same, where claim governed by New York law).  Similarly, Plaintiff's claim for "tortious destruction" is, on its face, equivalent to the copyright claims. (Cmplt. ¶ 71) ("tortious destruction" claim based on "acts of infringement" and "dissemination of the Infringing Works").  Counts IV and V should be dismissed on preemption grounds alone.

Second, Plaintiff's claim for "tortious destruction of intellectual property" fails for the independent reason that it is not a recognized cause of action under New York or Pennsylvania law.  Indeed, Defendants are unable to locate any authority supporting the recognition of such a

---

[8]  For purposes of this motion only, Defendants do not contest Plaintiff's allegation that New York law governs the claim for common law unfair competition, as dismissal is required on preemption grounds irrespective of whether New York or Pennsylvania law applies.

common law claim – hardly surprising, as it is federal statutory law (here, the Copyright Act) that gives rise to intellectual property claims sounding in tort. *Cf. Davis v. Blige*, 505 F.3d 90, 103 n.11 (2d Cir. 2007) (copyright "[i]nfringement has long been recognized as a tort.").

Third, even ignoring the fact that it is preempted, Plaintiff's tortious interference claim fails for the additional and independent reason that the Complaint alleges *no* facts that could give rise to a plausible claim. It is well-settled that, to survive a motion to dismiss, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)) (internal citation and syntax omitted). While the Complaint identifies two alleged contracts (Cmplt. ¶ 68), Plaintiff fails to allege facts establishing *any* purposeful action by Defendants to harm or interfere with these agreements; how those relationships were interfered with; or that Plaintiff has suffered any damages – all required elements of the claim, whether under New York or Pennsylvania law.[9] Plaintiff's rote assertion (*id.* ¶ 69) that Defendants "willfully interefed [*sic*] with such agreements causing direct and immediate harm to Plaintff [*sic*]" is the very type of formulaic recitation and naked assertion that, under *Twombly* and *Iqbal*, does not suffice. Plaintiff's tortious interference claim should be

---

[9] "Under Pennsylvania law, a claim of tortious interference must include allegations satisfying the following four elements: (1) The existence of a contractual or prospective contractual relation between the complainant and a third party; (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual legal damage as a result of the defendant's conduct." *Tegg*, 650 F. Supp. 2d at 429.

"Under New York law, the elements of a claim for tortious interference with business relations are: (1) a plaintiff's business relationship with a third party; (2) the defendant's interference with that business relationship; (3) a showing that the defendant acted with the sole purpose of harming the plaintiff or used dishonest, unfair, or improper means; and (4) injury to the relationship." *Gary Friedrich Enters.,* 713 F. Supp. 2d at 228.

dismissed for this reason as well. *See, e.g., Culinary Serv. of Del. Valley, Inc. v. Borough of Yardley*, 385 F. App'x 135, 143 (3d Cir. 2010) (affirming dismissal of tortious interference claim supported only by "bare assertions"); *Bioquell, Inc. v. Feinstein*, 2010 U.S. Dist. LEXIS 124077, at *19-20 (E.D. Pa. Nov. 23, 2010) (dismissing tortious interference claim where "Plaintiff's allegations of tortious interference with business relationships are purely conjectural").

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that Plaintiff's Complaint be dismissed in its entirety, with prejudice.

Dated: New York, New York
       November 6, 2017

By:   */s/ Wook Hwang*
     Jonathan Zavin (admitted *pro hac vice*)
     Wook Hwang (admitted *pro hac vice*)
     Sara A. Slavin
     LOEB & LOEB LLP
     345 Park Avenue
     New York, New York 10154
     (212) 407-4000

     Jayme L. Butcher (PA 87568)
     BLANK ROME, LLP
     501 Grant Street, Suite 850
     Pittsburgh, Pennsylvania 15219
     (412) 932-2800

     *Attorneys for Defendants Viacom International Inc.*
     *and Penguin Random House LLC*

15344225

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date, a true and correct copy of the Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint was furnished by the electronic filing email system.

Dated:  November 6, 2017

*/s/ Wook Hwang*
_____
WOOK HWANG